**United States District Court**
For the Northern District of California

1
2
3
4
5                        UNITED STATES DISTRICT COURT
6                       NORTHERN DISTRICT OF CALIFORNIA
7
8   INHERENT.COM aka INHERENT,                No. C 05-3515 MHP
9              Plaintiff,                      **MEMORANDUM  & ORDER**
                                              **Defendant's motion to dismiss or,**
10  vs.                                        **in the alternative, to transfer**
11  MARTINDALE-HUBBELL, LEXIS/NEXIS INC. and
12  DOES 1 through 200, inclusive,
13             Defendants.
                                      _____/
14
15          On July 29, 2005  plaintiff Inherent.com ("Inherent") filed this action in the Superior Court
16  of the State of California against defendants Martindale-Hubbell ("Martindale") and Lexis/Nexis,
17  Inc. ("LexisNexis") alleging breach of contract and fraudulent acquisition of trade secrets.  On
18  August 30, 2005 Martindale and LexisNexis removed the action to this court.  Now before the court
19  is the defendants' motion to dismiss the action pursuant to the first-to-file rule or, in the alternative,
20  defendants' motion to transfer the action to the federal district court of New Jersey  pursuant to 28
21  U.S.C. section 1404.  Having considered the arguments presented and for the reasons stated below,
22  the court enters the following memorandum and order.
23
24  BACKGROUND
25          Martindale and LexisNexis are not legal entities but are divisions of Reed Elsevier, Inc.
26  ("Reed") which specializes in the provision of various products and services used by the legal
27
28                                            1

profession.  Inherent provides internet-related services for professional organizations such as law firms and legal professional associations.  <u>See</u> Corcoran Dec. ¶ 3.  Reed's principal place of business is in Newton, Massachussetts and LexisNexis' principal place of business is in Miamisburg, Ohio.  At the inception of the relationship between Inherent and Martindale, Inherent's principal place of business was in Portland, Oregon.  Although LexisNexis is a named defendant in the lawsuit, substantially all the disputed activity occurred with its affiliate Martindale, and thus LexisNexis has adopted Martindale's arguments in the current motion. Def.'s Mot. at 3.

Since the mid-1990s, Martindale and Inherent have had a significant business relationship. In 1996, the parties entered into a Marketing Alliance Agreement ("MAA") to "market and provide Internet Web facilities for lawyers and law firms." Corcoran Dec., Exh. A.  This MAA provided for the resolution of any disputes between the parties through arbitration in New Jersey or New York. <u>Id.</u> ¶ 11.  Although the MAA expired in 2002, during its effective period, Inherent generated revenues in excess of $200,000 through Martindale's sales to its customers.  Despite the expiration of the MAA, the two companies continued to engage in substantial business dealings with one another.   Martindale paid Inherent over $93,000 in 2003, $67,000 in 2004 and $78,000 in 2005 thus far. <u>Id.</u> ¶ 8.  Indeed since January of 2000, Inherent has received in excess of $1,000,000 from Martindale.  Additionally, executives of Inherent have made trips to Martindale's New Jersey offices approximately forty times during the course of their business relationship, the great majority of these trips being made by the president of Inherent, Debra Kamys.

In August of 2004, Ms. Kamys approached Martindale about the feasibility of a purchase of Inherent by Martindale.  Concomitant with the acquisition negotiations, the parties executed a non-disclosure agreement ("Non-Disclosure Agreement" or "NDA") on November 1, 2004.  Pursuant to this NDA, which is governed by New Jersey law, the parties were prohibited from using confidential, proprietary or trade secret information disclosed during the run-up to the proposed acquisition.  Little Dec., Exh. A ¶¶ 1,6.  The parties continued their acquisition negotiations and on May 25, 2005 Ms. Kamys visited the headquarters of Martindale in New Jersey where she was presented with a proposed non-binding letter of interest ("Letter of Interest"). The Letter of Interest

2

was drafted by Martindale in New Jersey, sent to Inherent in Oregon for signing and then returned to Martindale in New Jersey.  See Little Dec. ¶¶7–16 and Exh. C.  The final form of the Letter of Interest was executed on June 17, 2005 with a stated purpose of providing a "preliminary *non-binding* indication of interest in acquiring the web site development, management and hosting applications and services business . . . of Inherent.com, Inc. . . .  and [detailing Martindale's] proposed next steps to move this potential transaction forward."  Id., Exh. B at 1 (emphasis added). The Letter of Interest also noted that "any [resulting acquisition] transaction based upon this indication of interest will be subject to . . . [a number of] conditions precedent."  Id. at 2.  One such key condition was the completion of the legal and business due diligence of Inherent.  After the execution of the Letter of Interest, Martindale began its due diligence of the target company.  On June 28, 2005 (a mere eleven days after the execution of the Letter of Interest) Martindale informed Inherent that based on some discoveries during its initial due diligence, it no longer desired to proceed with the acquisition.  As a result, Martindale asserts that all confidential files were returned to Inherent pursuant to the requirements of the NDA.  Little Dec. ¶ 17.  From August 2004 (when Ms. Kamys first approached Martindale about the proposed acquisition) through June 2005 (when this Letter of Interest was signed), Martindale and Inherent exchanged a substantial amount of telephone calls, e-mails and in person meetings in Oregon and in New Jersey.  Id. ¶ 7; Kamys. Dec. ¶¶ 11, 12.

On July 13, 2005 Inherent's counsel notified Martindale of his client's belief that Martindale, by declining to proceed with the acquisition, had breached an acquisition contract with Inherent and warned that if the matter was not settled in five days, Inherent would seek to litigate its claims in court.  Duckstein Dec., Exh. E at 5.  On July 18, 2005 Reed filed for declaratory relief in the Superior Court of New Jersey requesting that the court issue a declaratory judgment stating that Martindale was not in breach of any obligation to Inherent in connection with the acquisition negotiations and that Reed had no liability to Inherent for terminating its preliminary interest in pursuing the transaction.  Id., Exh. A at 5.  On the same day of the filing, Martindale informed Inherent of its filed complaint and completed service of process on plaintiff on July 20, 2005.  Id.,

Exh. C.

On July 29, 2005  Inherent filed a similar action in the Superior Court of California seeking declaratory relief and damages for breach of contract and for fraudulent acquisition of its trade secrets.   Plaintiff claims that this filing was made in California because of the relocation of its business and its key witnesses to San Francisco, California—an event that allegedly occurred prior to the filing of Reed's complaint in New Jersey.  According to the Kamys declaration, two of plaintiff's principal witnesses (Ms. Kamys and her husband) have relocated from Oregon to California.  Kamys Dec. ¶ 15.  Plaintiff supports its claim that a change in Inherent's principal place of business from Oregon to California occurred in early July with a certification of registration issued by the state of California which is dated August 23, 2005.  Kamys Dec. Exh. A.  Inherent's purported new principal place of business shares an address with that of its San Francisco counsel: 781 Beach Street, # 333, San Francisco, CA. Id.  As of August 22, 2005, there was no record of any business under the name of  "Inherent" or "Inherent.com" registered with the California Secretary of State.  Marinez Dec., Exh. B.[1]  As of October 11, 2005 contact information on Inherent's website listed a Portland, Oregon address.  Marinez Supp. Dec., Exh. A.[2]  As of October 14, 2005 there was no local directory listing for "Inherent.com" or "Inherent" in San Francisco.

On August 15, 2005 Inherent removed the New Jersey action to federal court on diversity grounds.  Similarly, on August 30, 2005 Martindale removed the current action to this court.  Martindale has identified fourteen witnesses, twelve of whom reside in New Jersey.  Little Dec. ¶¶ 18–19.  Inherent has identified nine witnesses, seven of whom reside in Oregon.  Kamys Dec. ¶15.

Now before this court is defendant Martindale's motion to dismiss or transfer the action in light of the previously filed New Jersey action or because of a failure to plead fraud with sufficient particularity.  In the alternative, Martindale has filed a motion to transfer the action to the district court in New Jersey.  Plaintiff opposes the motions, arguing *inter alia* that: (1) the first-to-file rule is inapplicable in the present case, (2) equitable considerations weigh in favor of a departure from the first-to-file rule, (3) the New Jersey district court lacks personal jurisdiction over Inherent, and (4) litigation in New Jersey  would be inconvenient for Inherent because they did not anticipate

4

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1    litigation in that forum.

2           Having considered fully the parties' arguments and submissions, and for the reasons set forth

3    below, the court enters the following memorandum and order.

4

5    LEGAL STANDARD

6    I.     First-to-File Rule

7           The first-to file rule is "a generally recognized doctrine of federal comity which permits a

8    district court to decline jurisdiction over an action when a complaint involving the same parties and

9    issues has already been filed in another district."  Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d

10   93, 94–95 (9th Cir. 1982) (quoting Church of Scientology of California v. United States Dep't of the

11   Army, 611 F.2d 738, 749 (9th Cir. 1979)); see also Z-Line Designs, Inc. v. Bell'O Int'l, LLC, 218

12   F.R.D. 663 (N.D. Cal. 2003) (Whyte, J.); MP3 Board v. Recording Indus. Assoc. of Am., Inc., No.

13   C-00-20606, 2001 WL 804502 (N.D. Cal. Feb. 27, 2001) (Whyte, J.).  The "sameness" requirement

14   does not mandate that the two actions be identical, but is satisfied if they are "substantially similar."

15   Dumas v. Major League Baseball Properties, Inc., 52 F. Supp. 2d 1183 (S.D. Cal. May 14, 1999),

16   vacated on other grounds by, 104 F. Supp. 2d 1224 (S.D. Cal. June  21, 2000), aff'd, 300 F.3d 1083

17   (9th Cir. 2002). See also British Telecomm. v. McDonnell Douglas Corp., No. C-93-0677, 1993 WL

18   149860 at *4 (N.D. Cal. May 3, 1993) (Patel, J.) (finding that Alltrade "does not stand for a blanket

19   rule that there must be strict identity of parties for the first-to-file rule to apply.").  The purpose of

20   this well-established rule is to promote efficiency and to avoid duplicative litigation and thus it

21   should not be lightly disregarded.  Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir.

22   1991).  Under the doctrine, a district court may transfer, stay or dismiss the second action if it

23   determines that it would be in the interest of judicial economy and convenience of the parties.

24   Pacesetter, 678 F.2d at 95.  The pre-requisites for application of the doctrine are chronology and

25   identity of the parties and issues involved.  Alltrade, 946 F.2d at 625.

26          In its discretion, the district court may depart from the rule for reasons of equity, when the

27   filing of the first suit evidences bad faith, anticipatory suit, or forum shopping.  Id. at 628.  The

28

**United States District Court**

For the Northern District of California

1    anticipatory suit exception is rooted in a concern that a plaintiff should not be "deprived of its

2    traditional choice of forum because a defendant with notice of an impending suit first files a

3    declaratory relief action over the same issue in another forum." British Telecomm., 1993 WL

4    149860 at *3.  In order for a court to find that the initial suit was anticipatory, the plaintiff in the first

5    action must have been in receipt of "specific, concrete indications that a suit by defendant was

6    imminent." Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994) (Whyte, J.) (citing

7    Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967) (where the court found the

8    filing of a declaratory action by plaintiff anticipatory when it followed receipt of defendant's letter

9    stating that defendant would sue plaintiff in another forum where it could properly serve plaintiff, if

10   plaintiff did not voluntarily submit to jurisdiction in the current forum)); see also Bryant v. Oxxford

11   Express, Inc., 181 F. Supp. 2d 1045, 1048-9 (C.D. Cal 2000) (finding that the receipt of a letter

12   declaring that plaintiff was in breach did not render the suit filed "anticipatory" because it did not

13   indicate that a lawsuit was imminent and plaintiff already had a pre-existing motive for going to

14   court); Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc., et al., 179 F.R.D. 264 (C.D. Cal.

15   1998) (letter informing plaintiff about possible patent infringements did not threaten litigation and

16   thus declaratory action filed was not anticipatory).

17

18   II.     Motion to Transfer

19           Pursuant to 28 U.S.C. section 1404(a), a district court may transfer a civil action "for the

20   convenience of parties and witnesses [and] in the interest of justice . . . to any other district or

21   division where it might have been brought."  28 U.S.C. § 1404(a); Straus Family Creamery v.

22   Lyons, 219 F. Supp. 2d 1046, 1047 (N.D. Cal. 2002) (Zimmerman, J.).  A motion to transfer venue

23   lies within the broad discretion of the district court, and must be determined on an individualized

24   basis.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir.) (citing Stewart Org., Inc. v.

25   Ricoh Corp., 487 U.S. 22, 29 (1988)), cert. denied, 531 U.S. 928 (2000).  The burden of showing

26   that transfer is appropriate is on the moving party.  The Carolina Casualty Co. v. Data Broad. Corp.,

27   158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (Walker, J.).

28

                                                        6

United States District Court

For the Northern District of California

District courts use a two step analysis to determine whether a transfer is proper. The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought. 28 U.S.C. § 1404(a); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). If venue would be appropriate in the transferee court, then the court must make an "individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498. Among the factors that a district court may consider in deciding whether a transfer is appropriate are: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses; (8) the ease of access to sources of proof and (9) any relevant public policy of the forum state. Jones, 211 F.3d at 498-99 (citing Stewart, 487 U.S. at 29-31 and Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)).

DISCUSSION

I.      First-to-File Rule

Martindale asserts that Inherent's current action must be dismissed, or in the alternative transferred, because of the previously filed action in New Jersey. In opposition, plaintiff argues that the first-to-file rule is inapplicable because the issues presented in the two cases are not identical. Alternatively, even if the doctrine is found to be applicable, plaintiff asserts that the court should depart from the rule for reasons of equity.

The first-to-file rule is applicable in this case because the New Jersey action was filed before the current action and it involves the same issues and parties. Martindale and Inherent are the parties in dispute in both the New Jersey and California actions. Although the suit in New Jersey was filed by Reed, it seeks declaratory relief that Reed is not obligated, *through the actions of its Martindale division*, to purchase any of Inherent's assets. See Duckstein Dec., Exh. A ¶20.

7

United States District Court

For the Northern District of California

Plaintiff contends, however, that the issues in the two actions are dissimilar because Inherent has asserted a claim for damages in its latter-filed action that is "the result of the tortious conduct of defendants and . . . [is] not dependent upon whether or not any contract for the sale of [Inherent] was valid or not." Pl.'s Opp. at 6.  Thus, plaintiff argues, if the action is dismissed pursuant to the first-to-file doctrine, it would be deprived of this additional remedy.  However, the issues in the first and second action need not be identical but "substantially similar.  See Dumas, 52 F. Supp. 2d at 1189.  The key dispute in both actions is over whether or not the Letter of Interest gave rise to a binding contract, and if so whether a breach did in fact occur.  The allegedly tortious conduct with respect to Inherent's trade secrets occurred during the acquisition negotiations and, indeed, in its complaint, Inherent asserts that Martindale entered into these negotiations with the express purpose of misappropriating these trade secrets.  See Duckstein Dec., Exh. E ¶15.  Additionally, even though Inherent does not specifically make note of this in its complaint, plaintiff's fraud claim necessarily involves a construal of the Non-Disclosure Agreement — an agreement that was executed in furtherance of the proposed acquisition and the terms of which expressly govern the disclosure of confidential information.  Thus a ruling on this fraud issue will be intimately intertwined with the factual and legal considerations surrounding the acquisition.  Moreover, the mere existence of this fraud claim does not disqualify an application of the first-to-file rule as plaintiff may raise this additional prayer for relief as a counter-claim in the previously filed New Jersey action.

A.    Dismissal of the California Action

Notwithstanding the applicability of the doctrine, the anticipatory nature of plaintiff's New Jersey suit, as well as judicial economy and efficiency, counsel against a dismissal of the current suit.  Plaintiff alleges that the filing of suit in New Jersey was a "preemptive strike" by defendants and an exercise in forum-shopping, which should militate against application of the doctrine.  See Alltrade, 946 F.2d at 628.  Plaintiff contends that Reed filed the New Jersey action in response to an attempt by Inherent to informally resolve the matter and thus the first-to-file rule should be disregarded for equitable reasons because such activity "discourages the informal resolution of

1    disputes between parties." Pl.'s Opp. at 9.[3]

2          It is clear that the New Jersey action was a suit filed in anticipation of litigation by Inherent.

3    The July 13, 2005 letter was a specific and concrete indication that a suit by Inherent was imminent.

4    See Ward, 158 F.R.D. at 648. The letter not only claimed that there had been a breach of contract,

5    but after a five-page exhaustive analysis of the factual history surrounding the acquisition

6    negotiations and a discussion of the harms allegedly suffered by Inherent, it stated that "unless a

7    settlement is reached within five (5) business days a lawsuit will be filed." Duckstein Dec., Exh E at

8    5. The letter also requested that Martindale respond no later than July 18, 2005. Instead of

9    responding to this letter, Reed filed a declaratory action in New Jersey at the end of the five business

10   day period, on July 18, 2005. Thus, with notice of an impending suit by Inherent, Martindale chose

11   to preemptively file a declaratory suit in its home district. See Ex-Im Plastics, Inc., v. Miwon Am.,

12   Inc., No. CV 96-5710, 1996 WL 928189 at *5 (C.D. Cal. 1996) (noting that the filing of a

13   declaratory action is a "red flag that there may be compelling circumstances to depart from the first-

14   to-file rule."). To impose the "first-to-file" doctrine in this instance by dismissing this action would

15   unreasonably penalize Inherent which attempted to resolve the dispute before filing suit.

16   Consequently, because of the anticipatory nature of the suit filed in New Jersey, it would be

17   inequitable to dismiss the current action under the first-to-file doctrine.[4]

18

19          B.      Transfer of the California Action

20          Absent dismissal, defendant requests that the court transfer the action to the District Court

21   for the District of New Jersey under section 1404 for the convenience of the parties and in the

22   interest of justice. Plaintiff opposes this request, arguing that the New Jersey District Court lacks

23   personal jurisdiction over Inherent and that New Jersey is not the most convenient forum for the

24   litigation. Plaintiff requests that if the action is not maintained in California, it should be transferred

25   to Oregon.

26          Transfer of the suit from California would be proper because this state has no relation to the

27   parties or to the dispute. Under the general rule, a plaintiff's choice of forum is given deference.

28

**United States District Court**

For the Northern District of California

1  <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1985).  However, "the

2  degree to which courts defer to the plaintiff's chosen venue is substantially reduced when the

3  plaintiff's choice is not its residence or where the forum lacks a significant connection to the

4  activities alleged in the complaint."  <u>Carolina Casualty</u>, 158 F. Supp. 2d at 1048 (quoting <u>Fabus</u>

5  <u>Corp. v. Asiana Express Corp.</u>, No. C 00-3172, 2001 WL 253185 at *1 (N.D. Cal. 2001)).  Here, the

6  only connection that this litigation has to California is the alleged relocation of Inherent's business

7  and two of its key witnesses to the state in early July.  However, as noted by the New Jersey District

8  Court in denying Inherent's motion to dismiss or, in the alternative, to transfer venue to California:

9  "Inherent's relocation appears to be no more than an ingenious 'forum shopping' event." Def's

10  Supp. Req. Jud. Notice, Exh. E at 7.[5]  Besides a registration certificate, which bears an August 2005

11  rather than a July 2005 date, when this case was filed,[6] Inherent has offered up no other evidence of

12  a relocation to justify the filing of suit in California.[7]  As of October 12, 2005 there was  no record,

13  on either its own website or on the California Secretary of State website that Inherent was registered

14  to do business in, and had indeed moved to, California.  With a business address which is the same

15  as that of its California counsel, and a website that as of October 12, 2005, still listed Portland,

16  Oregon as its principal place of business,  it is clear that Inherent's relocation is illusory at best.

17  Furthermore, the court finds that transfer to Oregon would be inequitable in light of plaintiffs

18  gaming of the venue question. Plaintiff can hardly complain of the failure to transfer this case to

19  Oregon since it could have brought the action there in the first place.[8]  Having chosen not to do so, it

20  lost its opportunity to litigate this case in Oregon.  The court also notes that when plaintiff filed its

21  complaint on July 29, 2005 plaintiff did not allege that it was a California corporation or that it had

22  its principal place of business in California.  It merely alleged that it "is a corporation conducting

23  substantial business in San Francisco, California . . .".  Duckstein Dec., Exh. E ¶ 1.  Even in its

24  removal notice filed in the New Jersey District Court and dated August 15, 2005 (after its purported

25  re-location to California), plaintiff stated that it "was a corporation incorporated under the laws of

26  the State of Oregon, and with its principal place of business in Oregon."[9]  <u>Id.</u>, Exh. F ¶ 4.

27  A transfer of the action to New Jersey rather than Oregon would be for the convenience of

28  10

the parties and witnesses and serve the interest of justice as: (1) New Jersey local law is implicated in this action,[10] (2) New Jersey is the place where the majority of witnesses are located, (3) consolidation with the first-filed action is feasible and (4) the New Jersey district court has personal jurisdiction over Inherent and the suit could have been properly brought in New Jersey.[11] Plaintiff asserts that seven of its nine identified witnesses reside in Oregon, that all its internal documents relating to the proposed acquisition are in Oregon and that the Non-Disclosure Agreement and the Letter of Interest were executed by Inherent in Oregon. However, Martindale drafted the Letter of Interest in New Jersey and the majority of witnesses (twelve of the fourteen witnesses identified by Martindale) reside in New Jersey. Although, both parties exchanged an enormous amount of communications and made visits to each other's headquarters during the acquisition negotiations, New Jersey has a stronger interest than Oregon in litigating the case because its local law is implicated and there is a pending suit on the same issues. Additionally, to transfer the suit to New Jersey would further the first-to-file rule's purpose of promoting efficiency and avoiding the duplication of litigation. The New Jersey District Court is well-suited to make a determination as to the enforceability of the Letter of Interest and the viability of the fraudulent acquisition claim. Consequently, given the fact that suit could have been properly brought in New Jersey federal court, and given the interest of efficiency, justice and convenience, transfer to the court where the first suit was filed is appropriate.

CONCLUSION

     For the reasons stated above, defendants' motion to dismiss is DENIED and defendant's motion to transfer is GRANTED. The Clerk of Court shall transfer the file in this action to the United States District Court for the District of New Jersey.

IT IS SO ORDERED.

Date:   March 10, 2006

11

1   _____

2   MARILYN HALL PATEL
    United States District Court Judge
3   Northern District of California

4

5

6                                **ENDNOTES**

7   1.  The court conducted another search on November 21, 2005 and as of that date the California
    Secretary of State website still did not list "Inherent" or "Inherent.com" as a company registered to do
8   business in California.

9   2.   The Inherent website has now been changed, listing the company's principal place of business as
    being in both California and Oregon.  At oral argument  Inherent argued unpersuasively that despite
10  being an internet business, the change in its website did not occur sooner because the company was
    preoccupied with increased financial problems following the failure of the proposed acquisition.

11
    3.  Given the fact that the court grants defendant's motion to transfer pursuant to section 1404, the court
12  need not reach the parties' dispute over the sufficiency of plaintiff's fraud allegations under Fed. R. Civ.
    Pro Rule 12(b)(6).
13
    4.  At oral argument on October 31, 2005 defendant asserted that this court should not find that the filing
14  of its anticipatory suit was evidence of forum shopping since New Jersey was an appropriate venue in
    which to file the action.  Defendant's argument misses the point because, as the court noted at oral
15  argument, an anticipatory suit *is* an exercise in forum shopping.  See Alltrade, 946 F.2d at 628 (quoting
    Mission Ins. Co. v. Puritan Fashions Corp., 706 F.3d 599, 602 n. 3 (5th Cir. 1983) for the proposition
16  that "anticipatory suits are disfavored because they are aspects of forum-shopping").

17  5.  The court grants defendant's request and supplemental request for judicial notice pursuant to Federal
    Rule of Evidence 201(d).
18
    6.  To date, Inherent has provided no explanation for the lag in time between its purported relocation
19  and the issuance of the certificate by the California Secretary of State.

20  7.   The court declines to consider plaintiff's  late-filed declarations attempting to introduce new
    evidence in support of its purported relocation to California.  Moreover, these two declarations refer for
21  the most part to activities that occurred after Inherent's July 2005 filing and thus are irrelevant to a
    determination of what would constitute appropriate venue.
22
    8.  The court finds unpersuasive plaintiff's argument that they were unable to file suit in Oregon initially
23  because of the fact that plaintiff's counsel, due the financial difficulties facing Inherent, was essentially
    maintaining the company's directors here in San Francisco.
24
    9.  At oral argument, in attempting to explain the apparent inconsistency between Inherent's claim of
25  a business relocation and the statements in its filings before the courts in California and New Jersey,
    defendant's counsel conceded that Inherent was an Oregon corporation until the time of the filing of the
26  New Jersey complaint on July 18, 2005.

27

28                                       12

10. As discussed above, plaintiff's fraud claim with respect to the misappropriation of trade secrets implicates the Non-Disclosure Agreement which expressly designates New Jersey law as the governing law.

11. This issue is barred by issue preclusion as the New Jersey court, in its October 13, 2005 ruling, has already determined that Inherent purposely availed itself of the protection of the laws of New Jersey, engaging in substantial business activities with a New Jersey-based company for approximately ten years. See Supp. Req. Jud. Notice, Exh. E at 4. Having entered into several agreements with Martindale which have either New Jersey law as the governing law or designate New Jersey as the place for dispute resolution, Inherent cannot now claim that they did not reasonably expect to be hauled into a New Jersey court. At oral argument, plaintiff argued that the New Jersey District Court simply denied its motion to transfer and made no legal findings. However, this contention is belied by the fact that the court in its opinion conducted an extensive analysis of its ability to exert personal jurisdiction over Inherent. See Supp. Req. Jud. Notice, Exh. E.

United States District Court

For the Northern District of California

13